IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INNOVATIVE CONCEPTS CORPORATION | : | NO. 13-937 |

## MEMORANDUM

**Padova, J.**                                                                                   **July 16, 2014**

Plaintiff and Counterclaim-Defendant QVC, Inc. ("QVC") brought this breach of contract action against Defendant and Counterclaim-Plaintiff Innovative Concepts Corporation ("ICC") in connection with products that QVC purchased from ICC.   QVC has filed a Motion for Summary Judgment seeking judgment in its favor on three claims (Counts I and III of the Amended Complaint, and Count I of the Amended Counterclaim), all of which involve its purchase of screwdrivers that have a built-in light.   ICC has filed its own Motion for Summary Judgment, seeking judgment in its favor on those same claims, as well as on two other claims also involving the screwdrivers, i.e., Counts II and IV of the Amended Complaint.   We held argument on the Motions on June 12, 2014.   For the reasons that follow, we deny both Motions in their entirety.

## I.       BACKGROUND

The undisputed record facts are as follows.   QVC is a merchandise retailer, which markets and distributes a wide variety of products directly to consumers.   (QVC's Stmt. of Undisputed Material Facts ("QVC's Facts") ¶ 1.)   ICC also markets and distributes various consumer products, some of which it sells to QVC.   (Id. ¶ 2.)

On October 8, 2008, QVC issued to ICC two purchase orders (#600498 and #600500) (the "Purchase Orders"), each of which ordered 8,000 units of a ratcheting screwdriver with a light and pick-up tool (the "Screwdrivers"), for a total of 16,000 Screwdrivers.   (See Purchase Orders,

attached as Exs. A and B to 12/31/13 Bukher Decl.)   The price for the Screwdrivers was $11.95 per unit and, thus, the total cost for the two Purchase Orders was $191,200.   (See id.)   In accordance with the terms of the Purchase Orders, which provided for a "Payment Reserve" of 50%, QVC made initial payments to ICC for just half of the cost of the Screwdrivers, or $95,600, and withheld the other half of the payment (the "Reserve") pending its successful sale of the Screwdrivers.   (See Purchase Orders at 1 and § 9; ICC's Stmt. of Undisputed Material Facts ("ICC's Facts") ¶ 7.)   Upon QVC's initial payment, ICC delivered all 16,000 Screwdrivers to QVC.   (QVC's Facts ¶ 10.)   In doing so, ICC accepted the terms and conditions of the Purchase Orders without modification.[1]   (Id.)

On April 22, 2009, QVC sent a memorandum to ICC, requesting that ICC issue a return authorization for 14,010 Screwdrivers "[d]ue to the sales performance."   (Ex. 4 to Kujawa Decl.) According to QVC, this request was made pursuant to Section 8 of the Purchase Orders, commonly called the "Sale or Return Provision," which provides for the return of a certain percentage of merchandise if the merchandise is not sold. (See Purchase Orders § 8.) Specifically, Section 8 provides as follows:

> 8.   If a percentage greater than zero is indicated in the Sale or Return designation on the face hereof, then this is a "sale or return" transaction as defined in the Uniform Commercial Code as enacted in Pennsylvania, 13 Pa.C.S., Division 2.   In addition to its right to return Merchandise as provided elsewhere in this Order, [QVC] may return to [ICC], for credit or cash, at [QVC's] option, all or any portion of the following: (a) with respect to "sale or return" transactions only, any Merchandise which is not sold by [QVC] up to the percentage indicated in the "Sale or Return" designation on the face hereof (based on the aggregate amount of this Order) within sixty (60) days after remittance of the Subsequent Payment, or, if no Subsequent Payment, within one hundred and eighty (180) days after remittance of [QVC's] Initial Payment to [ICC] . . . The

---

[1]   The parties agree that the terms and conditions set forth in the Purchase Orders constitute the full understanding of the parties.

> expenses incident to the return of Merchandise to [ICC] under the foregoing clause (a) shall be paid by [QVC] unless otherwise specified on the face hereof. . . .   [QVC] is not obligated to pay for any Merchandise returned to [ICC] and is therefore entitled to an immediate and full refund of any and all monies previously paid to [ICC] on account of such returned Merchandise.  If [ICC] fails or refuses to make arrangements for the return of Merchandise satisfactory to [QVC] within five (5) days of receipt of [QVC's] request for return authorization, if any, [QVC] may make such arrangements on [ICC's] behalf and at [ICC's] risk and expense. If [ICC] fails or refuses to accept any returned Merchandise and/or to remit such refund to [QVC] in a timely manner and in accordance with the terms of the Order, [QVC] may debit such amount against [ICC's] account and/or take such other action as it may deem necessary or desirable to recover the monies owed by {ICC] . . . . The rights of [QVC] set forth in this Section are in addition to, and not in lieu of, any and all other rights and remedies available to [QVC] pursuant to this Order, applicable law or in equity.

(Id.)  As noted above, the Purchase Orders, on their face, include a sale or return designation, which states "50% Sale or Return."  (Purchase Orders at 1.)   ICC declined QVC's April 22, 2009 request for a return authorization for 14,010 Screwdrivers.  (See Gelormino Decl. ¶ 5.)

Subsequent to QVC's request for return authorization for 14,010 Screwdrivers pursuant to the Sale or Return Provision, QVC received a letter dated May 19, 2009, from a patent holder who asserted that the Screwdrivers infringed upon his patents for a similarly-designed screwdriver. (Ex. K to 12/31/13 Bukher Decl.)   In a June 17, 2009 letter, QVC notified ICC of the patent holder's assertion and reminded ICC that the Purchase Orders included an indemnification provision, which required ICC to defend, hold harmless, and indemnify QVC "'against any and all claims, actions, suits, costs, liabilities, damages and expenses'" resulting from "'alleged or actual infringement of . . . any . . . third party rights . . . .'"[2]  (Ex. 7 to Kujawa Decl., at QVC000063

---

[2] More specifically, the indemnification provision provides, in pertinent part:

> 4.  [ICC] hereby agrees to protect defend, hold harmless and indemnify [QVC] . . . from and against any and all claims, actions,

(alterations in original) (quoting Purchase Orders § 4).)   QVC asked ICC to affirm its indemnity

obligation within five days and to advise QVC how it intended to defend against the patent

holder's claims.   (Id.)   QVC further advised ICC that it would be suspending sale of the

Screwdrivers until the indemnity issue was resolved to QVC's satisfaction.   (Id. at QVC000064.)

On December 10, 2009, in response to an email from ICC regarding "the outstanding

payment for the lighted driver 2 pack," QVC sent an email to ICC, attaching the June letter and

stating that payment was "frozen at the moment by legal."   (Ex. 1 to O'Neal Decl., at

QVC000055.)   QVC also said in its email that it "should have received a return authorization" for

the allegedly infringing Screwdrivers, and requested that ICC then provide "an RA#, address,

contact and phone number."   (Id.)   There is no evidence in the record, however, that ICC ever did

so.

One year later, on December 23, 2010, ICC sent an email to QVC, stating that it had

reached out to the patent holder "quite a few times" and had not heard back from him.   (Ex. A to

1/10/14 Bukher Decl.)   It therefore asked whether QVC would "just allow [the Screwdrivers] to

be sold" and ICC would indemnify it.   (Id.)   QVC responded that it would need a "letter of non

infringement to continue to sell the product" and suggested that ICC's patent attorney talk to

QVC's patent attorney.   (Id.)   On March 8, 2011, ICC's counsel sent a letter to counsel for QVC,

in which he analyzed the relevant patents and opined that the Screwdrivers did not infringe on the

accusing patent holder's patents.   (Ex. B to 1/10/14 Bukher Decl.)

---

suits, costs, liabilities, damages and expenses (including, but not
limited to, all direct, special, incidental, exemplary and
consequential damages and losses of any kind [including, without
limitation, present and prospective lost profits and lost business] and
reasonable attorneys' fees) based upon or resulting from: (a) any
alleged or actual infringement of the IP Rights, . . . .

(Purchase Orders § 4.)

4

On January 26, 2012, QVC sent ICC a demand letter, in which it "insist[ed] that ICC . . . accept the return shipment of the [allegedly infringing Screwdrivers] for a full refund to QVC," and again requested return authorization for the merchandise.   (Ex. 5 to Kujawa Decl. at 3-4.) QVC further stated that it reserved the right to insist upon a full refund prior to the return shipment of the infringing Screwdrivers.   (Id. at 4.)   However, to date, no goods in connection with the Purchase Orders have ever been returned to or accepted by ICC, and QVC continues to retain possession of the Screwdrivers.   (Gelormino Decl. ¶ 6; Kujawa Decl. ¶ 16.)   In addition, ICC has not issued a refund for the allegedly infringing Screwdrivers.   (Kujawa Decl. ¶ 16.)

QVC commenced this action in state court on January 22, 2013.   ICC removed the case to this Court on February 21, 2013, and QVC filed an Amended Complaint ("the Complaint") on March 27, 2013.   The Complaint contains six Counts, the first four of which concern the Screwdrivers.   Counts I and II assert claims for breach of contract based on ICC's breach of various contractual warranties and refusal to accept return of, and issue a refund for, the allegedly infringing Screwdrivers ("the Infringement Claims"), and seek damages of over $167,037.10.[3] Count III and IV assert breach of contract claims based on ICC's refusal to issue a refund for, and accept return of, 50% of the Screwdrivers under the Sale or Return Provisions of the Purchase Orders, and seek damages of no less than $95,000 (the "Sale or Return Claims").[4]   In response to

_____

[3] The allegations in Count I and II are very similar.   However, Count I focuses strictly on ICC's alleged contractual violation in failing to remit a refund for the allegedly infringing merchandise, while Count II alleges that ICC breached the contract by both refusing to accept return of the allegedly infringing merchandise and refusing to remit a cash refund for that merchandise.   (Compl. ¶¶ 61, 65-66.)   Consistent with these distinctions in the two claims, Count I seeks only damages, while Count II seeks not only damages, but also an injunction compelling ICC to accept return of the allegedly infringing Screwdrivers.

[4] As with Counts I and II, the allegations in Counts III and IV are very similar.   However, Count III focuses strictly on ICC's alleged contractual violation in failing to remit a "no less than $95,000" cash refund to QVC, while Count IV explicitly alleges that ICC breached the contract by

QVC's Complaint, ICC filed a three-Count Amended Counterclaim (the "Counterclaim).   In Count I of the Counterclaim, i.e., the only claim raised in the Counterclaim that is at issue here, ICC asserts its own breach of contract claim against QVC, alleging that QVC breached the Purchase Orders by failing to remit to ICC $95,600 that it had not yet paid for the Screwdrivers, and thus asserts that QVC owes ICC this amount.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   After the moving party has met its initial burden, the adverse party's response must support the assertion "that a fact cannot be or is genuinely disputed . . . by (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."   Fed. R. Civ. P. 56(c)(1). In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the

_____

both refusing to accept return of the Screwdrivers and refusing to remit a cash refund of no less than $95,000.   (See Compl. ¶¶ 74, 77-78.)   Consistent with these apparent distinctions in the two claims, Count III seeks only damages while Count IV seeks not only damages, but also an injunction compelling ICC to accept return of the Screwdrivers that QVC is allegedly entitled to return under the Sale or Return Provisions.

nonmoving party and draw all inferences in that party's favor." <u>Abramson v. William Paterson</u> <u>Coll. of N.J.</u>, 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted).

## III.    DISCUSSION

In QVC's Motion for Summary Judgment, QVC seeks judgment in its favor on Counts I and III of the Complaint and Count I of the Counterclaim.   In ICC's Motion for Summary Judgment, ICC seeks judgment in its favor on Counts I-IV of the Complaint and Count I of the Counterclaim.

### A.    The Infringement Claims

QVC argues that it is entitled to judgment in its favor on its Infringement Claim in Count I of the Complaint because Section 7 of the Purchase Orders entitles it to obtain a refund for any and all units of merchandise that fail to satisfy ICC's express or implied warranties, which, in QVC's view, include warranties that the Screwdrivers will be free from claims of infringement.[5]   ICC maintains that QVC has no right under the Purchase Orders to return and obtain a refund for merchandise that is subject to a claim of infringement, because the Purchase Orders provide that ICC will defend and indemnify QVC in the event of an infringement claim.   Thus, ICC posits that its provision of indemnification and defense to QVC are QVC's sole remedies in the face of an infringement claim.   ICC also contends that QVC has acted in bad faith in seeking to return and obtain a refund for the Screwdrivers on account of the patent holder's assertion of infringement. For both of these reasons, ICC contends that it is entitled to judgment in its favor on QVC's

---

[5] QVC suggests in its Motion for Summary Judgment and asserted at oral argument that Count I of the Complaint also contains a claim that ICC breached Section 4 of the Purchase Orders by failing to promptly assure QVC of its ability to indemnify the company after being notified of the accusing patent holder's claim.   The Complaint, however, does not mention ICC's obligation to provide QVC with such prompt assurance.   Accordingly, we do not read the Complaint to contain a claim for breach of the prompt assurance requirement in Section 4 and do not address that claim any further here.

Infringement Claims in Counts I and II of the Complaint.

As a general matter, "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Here, the parties agree that the Purchase Orders were enforceable contracts, but disagree as to whether ICC breached any duty imposed by those contracts.  The relevant provisions of the Purchase Orders for purposes of Counts I and II are Sections 2, 3 and 7.

Section 7 of the Purchase Orders addresses QVC's right to return and obtain a refund for merchandise that is "not in compliance with the Laws[,] this Order, the Regulations or the Standards."  (Purchase Orders § 7.)  Specifically, Section 7 provides as follows:

> 7.  Merchandise furnished hereunder which is not in compliance with the Laws[,] this Order, the Regulations or the Standards . . . may be rejected (or acceptance thereof by [QVC] revoked) at [QVC's] option and returned to [ICC].  All expense of unpacking, examining, repacking, storing, returning and reshipping any Merchandise rejected (or acceptance of which has been revoked) as aforesaid shall be at [ICC's] expense and risk.  With respect to such returned Merchandise . . . , [QVC] shall, at its option, receive a credit or refund . . . of amounts paid by [QVC] for each item of such Merchandise . . . . In the event that [QVC] shall opt to receive a refund, [ICC] shall pay [QVC] in immediately available funds within fifteen (15) days of [QVC's] request.  [QVC] reserves the right to require full refund prior to the return of Merchandise.  In the event that [QVC] shall opt to receive a credit, [QVC] may apply such credit toward any amounts due or which may become due to [ICC] . . . .

(Id.)

Meanwhile, Section 3 of the Purchase Orders contains express warranties, which state, in pertinent part, that:

> [ICC] represents, warrants and covenants to [QVC] that: . . . (h) all
> IP Rights which are part of or appear in connection with the
> Merchandise . . . and/or any component thereof, are valid and
> genuine, and the sale, promotion of the sale and performance of the
> Merchandise . . . and/or any component thereof, will not infringe
> upon any domestic or foreign IP Rights . . . . [and] (k) the
> Merchandise and similar goods are not and have not been subject to
> . . . infringement claims, except as disclosed on the face hereof . . . .

(Id. § 3.)   In addition, in Section 2 of the Purchase Orders, ICC grants QVC the "irrevocable" right

to use ICC's IP rights, stating that:

> [ICC] hereby grants to [QVC] the irrevocable right . . . to (a) market,
> promote the sale of and sell the Merchandise; [and] (b) use . . . the
> patents . . . and/or other intellectual property rights (collectively the
> "IP Rights") registered, owned, licensed to or used by [ICC] in
> connection with the Merchandise . . . .

(Id. § 2.)

The Pennsylvania Uniform Commercial Code (the "Pennsylvania UCC"), in 13 Pa. Cons.

Stat. Ann. § 2312, provides an additional implied warranty as follows:

> **(c) Warranty of merchant regularly dealing in goods.** – Unless
> otherwise agreed[,] a seller who is a merchant regularly dealing in
> goods of the kind warrants that the goods <u>shall be delivered free of
> the rightful claim of any third person by way of infringement</u> or the
> like but a buyer who furnishes specifications to the seller must hold
> the seller harmless against any such claim which arises out of
> compliance with the specifications.

13 Pa. Cons. Stat. Ann. § 2312(c) (emphasis added).

QVC contends that the undisputed record evidence establishes that it was entitled to a

refund for all of the Screwdrivers in its possession pursuant to Section 7 of the Purchase Orders,

because the Screwdrivers were not "in compliance with the Law and this Order."   QVC

specifically contends that, by selling QVC merchandise that was subject to a claim of

infringement, ICC breached the warranty in Section 2 of the Purchase Orders that ICC granted

QVC the "irrevocable right . . . to . . . use . . . the patents . . . and/or other intellectual property rights

. . . owned, licensed to or used by [ICC] in connection with the Merchandise" and also breached the warranties in Section 3 of the Purchase Orders that (1) "all IP Rights which are part of or appear in connection with the Merchandise . . . are valid and genuine," (2) "the sale, promotion of the sale and performance of the Merchandise . . . will not infringe upon any domestic or foreign IP Rights," and (3) "the Merchandise . . . are not and have not been subject to . . . infringement claims." (Purchase Orders §§ 2, 3(h), 3(k).)   QVC further contends that ICC's sale of merchandise that was subject to a claim of infringement breached the implied warranty imposed by the Pennsylvania UCC that its merchandise was "free of [any] rightful claim of any third person by way of infringement."[6]   13 Pa. Cons. Stat. Ann. § 2312(c).

However, contrary to QVC's assertions, the existing summary judgment record does not support a conclusion that ICC breached any of the warranties on which QVC relies and we find, to the contrary, that there are genuine issues of material fact as to whether any warranty was breached.   While the summary judgment record reflects that the accusing patent holder sent a letter to QVC, claiming that the Screwdrivers infringed on his patent rights, there is no evidence in the record to substantiate the patent holder's claim or to show that ICC was aware of any claim of infringement at the time it entered into the Purchase Orders.   QVC argues that it is unreasonable to require it to definitively prove that the Screwdrivers actually infringed upon the accusing patent

---

[6] At a minimum, a "rightful claim" is something more than a frivolous claim.  See, e.g., 84 Lumber Co. v. MRK Technologies, Ltd., 145 F. Supp. 2d 675, 680 (W.D. Pa. 2001) ("If claims of patent infringement are seen as marks on a continuum, whatever a 'rightful claim' is would fall somewhere between purely frivolous claims, at one end, and claims where liability has been proven, at the other."); see also EZ Tag Corp v. Casio America, Inc., 861 F. Supp. 2d 181, 184 (S.D.N.Y. 2012) ("[A] claim of infringement must have some merit beyond being 'nonfrivolous' for Rule 11 purposes to support a breach of warranty claim." (analyzing New York UCC § 2-312); Sun Coast Merch. Corp. v. Myron Corp., 922 A.2d 782, 797 (N.J. Super. Ct. App. Div. 2007) ("[T]o prove that a seller breached a warranty because goods were the subject of a third party's rightful claim of infringement, a buyer must establish that the infringement claim is of a substantial nature that is reasonably likely to subject the buyer to litigation . . . .").

holder's patent in order to trigger its Section 7 rights to return and receive a refund for the Screwdrivers.   However, putting aside the question of the precise quantum of proof necessary to trigger QVC's Section 7 rights, we find that, at an absolute minimum, the Purchase Orders require some substantiation of the infringement claim before QVC can receive a refund for products based on a breach of warranty under Section 7.   Here, QVC does not even argue that the accusing patent holder's infringement claim has merit, much less point to any evidence of such merit.   Rather, it takes the position that the mere assertion of a claim by letter establishes a breach of the various warranties and entitles it to a refund for all of the allegedly offending merchandise, even under circumstances in which the claim may be entirely frivolous.   We find this argument to be inconsistent with the plain language of the Purchase Orders and the Pennsylvania UCC. Consequently, we conclude that QVC has not established that it is entitled to judgment as a matter of law on this claim and deny QVC's Motion insofar as it seeks judgment in its favor on Count I.

As noted above, ICC argues in its Motion for Summary Judgment that judgment should be entered in its favor on the Infringement Claims in Counts I and II because QVC has no contractual right to return or receive a refund for the Screwdrivers in the event of a claim of infringement, even if that claim is substantiated.   ICC asserts that QVC's sole remedy in the event of a claim of infringement, whether substantiated or not, is ICC's agreement in Section 4 of the Purchase Orders to indemnify and defend QVC from such claims.   ICC maintains that, because Section 4 expressly requires it to provide indemnification and defense in the event of an infringement claim, there can be no other "implied" remedies in the contract, including any implied right to return and receive a refund for infringing merchandise.   ICC relies on Miziker Entm't Grp., Ltd. v. Clarendon Nat. Ins. Co., Civ. A. No. 01-3219, 2002 WL 32348830 (E.D. Pa. Oct. 1, 2002)), which states that

"[n]either an implied-in-fact contract nor an implied-in-law contract can be found if there is an express contract on the same subject."   Id. at *5 (citation omitted).

However, the rights to return and receive a refund for infringing merchandise under Section 7 simply cannot be characterized as "implied."   As detailed above, Section 7 expressly permits QVC to return any goods "which [are] not in compliance with the Laws[,] this Order, the Regulations or the Standards" (Purchase Orders § 7), and ICC expressly warrants in Section 3 of the Purchase Orders that its patent rights are "valid and genuine," that the Screwdrivers do not infringe on another patent holder's intellectual property rights, and that the Screwdrivers have not been subject to any prior claims of infringement.   (Id. § 3).   Clearly, if these warranties are breached, i.e., if there is, in fact, documented infringement or the Screwdrivers were subject to any infringement claim before ICC entered into the Purchase Orders, QVC has a right to return and receive a refund for the infringing goods pursuant to Section 7.   Accordingly, we reject ICC's argument that QVC's sole remedy in the face of an infringement claim is the remedy set forth in Section 4 of the Purchase Order.[7]

ICC alternatively suggests that QVC cannot prevail on its Infringement Claims because those claims were made in bad faith.   Specifically, it notes that QVC only sought to return the Screwdrivers as allegedly infringing products after ICC refused to issue a return authorization for more than 50% of the Screwdrivers under the Sale or Return Provision.   However, QVC's good or bad faith is entirely irrelevant to the question of whether it had a contractual right to return and

---

[7]   While neither party mentions Section 5 of the Purchase Orders or advances any argument with respect to that Section, we note that Section 5 appears to provide QVC with a specific remedy in the event that a third party advises QVC that the Screwdrivers infringe on the third party's IP rights.   Specifically, Section 5 states:   "[QVC] reserves the right to retain any funds due [ICC] as security for indemnification and/or cancel this Order or any part hereof, with no liability or obligation to [ICC], in the event [that]:   (a) [QVC] is notified that any Merchandise or Mark infringes or is alleged to infringe upon any third party rights . . . ."   (Purchase Orders § 5.)

obtain a refund for the Screwdrivers on account of the patent holder's claim of infringement.   We therefore reject ICC's suggestion that we should consider QVC's subjective motivations in ascertaining whether the contract permitted QVC to return and obtain a refund for the allegedly infringing merchandise.[8]

For the above reasons, we conclude that ICC has not sustained its burden on summary judgment of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on the Infringement Claims in Count I and II of the Complaint. Thus, in addition to denying QVC's Motion for Summary Judgment as to the Infringement Claim in Count I of the Complaint, we also deny ICC's Motion insofar as it seeks judgment in its favor as to Counts I and II of the Complaint.

### B.      The Sale or Return Claims

QVC argues that it is entitled to summary judgment in its favor on the Sale or Return Claim in Count III of the Complaint because ICC breached the Sale or Return Provisions of the Purchase Orders by failing to remit a "no less than" $95,000 refund for 8,000 unsold Screwdrivers that QVC sought to return.   At the same time, ICC asserts in its Motion for Summary Judgment that judgment should be entered in its favor on that same claim, as well as on the Sale or Return Claim in Count IV of the Complaint, because QVC did not exercise its right to return 50% (or 8,000) of

---

[8] ICC also asserts that the Screwdrivers simply do not infringe on any third party patent rights.   Neither party, however, has offered fully developed legal arguments on this complex issue and, in any event, we find that there are genuine issues of material fact as to whether the Screwdrivers infringe upon the accusing patent holder's intellectual property rights. Accordingly, we will not resolve this issue on the existing summary judgment record, and we deny ICC's motion to the extent that it asks us to do so.

the Screwdrivers within 180 days of its initial payment, as required by the Purchase Orders, but instead sought return authorization for 14,010 Screwdrivers within that time frame.[9]

       1.    QVC's Motion for Judgment in its Favor on Count III

QVC argues that it is entitled to judgment in its favor in an amount no less than $95,000 on the Sale or Return Claim in Count III, contending that Section 8 unambiguously entitles it to return up to 8,000 unsold Screwdrivers, that it asked ICC to issue a return authorization for those unsold Screwdrivers on April 22, 2009, and that ICC did not issue a return authorization and refused to issue a refund for the unsold Screwdrivers.   QVC contends that, under these circumstances, ICC breached a contractual obligation to remit a refund.[10] (Compl. ¶ 74.)   It relies on language in Section 8 that "[QVC] is not obligated to pay for any Merchandise returned to [ICC pursuant to the Sale or Return Provision] and is therefore entitled to an immediate and full refund of any and all monies previously paid to [ICC] on account of such returned merchandise."   (Purchase Orders § 8.)

QVC, however, fails to address the fact that this language in Section 8 appears to pertain only to refunds for merchandise that has actually been returned to ICC.   Indeed, the court in QVC,

---

[9] ICC further argues that QVC never paid for the 8,000 Screwdrivers that the Purchase Orders permitted it to return within the 180-day period and, thus, suffered no compensable damages.   As we explain at length below, we conclude that there is a genuine issue of material fact as to whether QVC actually paid for the 8,000 unsold Screwdrivers.   Accordingly, we find that ICC's argument lacks adequate support in the existing summary judgment record.

[10] QVC only explicitly states in Count III that ICC breached the Purchase Orders by failing to remit a refund.   (Compl. ¶ 74.)   Accordingly, we only address that alleged breach here.   We note, however, that QVC alleges in Count IV that ICC also breached the Purchase Orders by failing or refusing to accept return of the unsold Screwdrivers, presumably by failing to issue a return authorization.   (Compl. ¶ 77.)   Consequently, it appears that one issue to be resolved in connection with trial is whether the failure to issue a return authorization for unsold merchandise actually constitutes a breach of the Purchase Orders and, if so, what contractual remedy is available to QVC for such a breach.

Inc. v. MJC America Ltd., Civ. A. No. 08-3830, 2011 WL 2790156 (E.D. Pa. July 18, 2011), specifically found that Section 8 "[does] not give QVC the right to demand payment prior to relinquishing custody of the unsold [merchandise]."[11]   Id. at *9; see also id. at *8 (stating that Section 8 does not require a vendor "to provide a refund to QVC until [QVC] return[s] the unsold [merchandise]").   Here, the evidence is undisputed that QVC did not "relinquish[] custody of the unsold [merchandise]" but, rather, continues to retain possession of it.   Id. at *9; (see Kujawa Decl. at ¶ 13.)   Accordingly, based on the language in Section 8 and the above-referenced case law, which QVC has not adequately addressed, we conclude that QVC has failed to meet its burden of establishing that it is entitled to judgment as a matter of law on its Sale or Return Claim in Count III.

We further find that QVC has failed to establish its entitlement to judgment as a matter of law on Count III of the Complaint, because there is a genuine issue of material fact as to whether QVC actually paid for the unsold merchandise that it sought to return.   Section 8 requires ICC to pay QVC a refund of "monies previously paid to [ICC] on account of such returned merchandise." (Purchase Orders § 8 (emphasis added).)   It is undisputed that, on December 9, 2008 and January 13, 2009, QVC made identical initial payments to ICC of $47,800 in connection with Purchase Order No. 600498 and Purchase Order 600500, for a total payment of $95,600.   (Ex. D to

---

[11]      In MJC America, unlike the instant case, QVC had obtained a return authorization for the unsold merchandise.   See MJC America, 2011 WL 2790156, at *2.   However, the court did not suggest that QVC's obligation to relinquish custody of the unsold merchandise in order to obtain a refund was contingent upon its prior receipt of a return authorization.   Moreover, the Purchase Orders themselves explicitly authorize QVC to return unsold merchandise even in the absence of a return authorization.   See Purchase Orders § 8 ("[I]f [ICC] fails or refuses to make arrangements for the return of Merchandise satisfactory to [QVC] within five (5) days of receipt of [QVC's] request for return authorization, if any, [QVC] may make such arrangements on [ICC's] behalf and at [ICC's] risk or expense.")   Accordingly, we read MJC America to interpret the Purchase Orders as requiring QVC to relinquish custody of the unsold merchandise in order to obtain a refund, whether or not QVC has received a return authorization for the merchandise.

12/13/13 Bukher Decl., at 12-16, 29-30; Canceled Checks, attached as Ex. 4 to O'Neal Decl.)   It

is also undisputed that the remaining amount due on each Purchase Order, i.e., $47,800 on each

Purchase Order for a total of $95,600, was logged as the "Payment Reserve," thereby representing

a payment still due to ICC. [12]   (See Ex. 7 to O'Neal Decl.)

There is conflicting evidence, however, as to what subsequently occurred with respect to

the Payment Reserve.   ICC maintains that it was reserved as a credit, "which . . . QVC [could]

debit against in the event that [it] exercised its right to return 50% of the merchandise."   (ICC's

Mem. in Supp. of Summ. J. Mot. at 10.)   In support of this factual assertion, ICC relies on the

deposition testimony of QVC's Vice President of Finance Transaction Services, Alan Kujawa, that

"if QVC returned 50 percent of the merchandise in connection with [the] [P]urchase [O]rders back

to ICC, then ICC would not owe QVC anything."   (Kujawa Dep. at 89, attached as Ex. 6 to

O'Neal Decl.)

---

[12] Specifically, the Purchase Orders provide the following regarding initial payments for merchandise and the so-called "Payment Reserve":

> If a percentage greater than zero is indicated in the "Payment Reserve" designation on the face hereof, then [QVC] will withhold an amount equal to such percentage of the aggregate purchase price set forth on the face hereof (the "Reserve") from its Initial Payment and/or Subsequent Payment, at [QVC's] option, to [ICC] for the Merchandise, in anticipation of customer returns and, if a "sale or return" transaction, the return of unsold Merchandise to [ICC]. With respect to the portion of the Reserve allocable to customer returns, if the aggregate amount of such returns exceeds the Reserve amount, then such excess shall, at [QVC's] option, be immediately debited against [ICC's] account or paid by [ICC] to [QVC] within fifteen (15) days of receipt of [QVC's] request for such payment, and if the aggregate amount of such returns is less than the Reserve amount, then the remaining balance of the Reserve allocable to customer returns shall, at [QVC's] option, be credited to [ICC's] account or paid to [ICC] . . . .

(Purchase Orders § 9.)   As noted earlier, the "Payment Reserve" designation in the Purchase Orders is 50%.   (Id. at 1.)

QVC, however, points to other portions of Kujawa's testimony, which suggest that the Payment Reserve was not actually reserved for returns from the Purchase Orders, but rather was debited against for amounts that ICC owed to QVC in connection with different purchase orders. According to QVC, "[t]he remaining, unpaid $95,600 reserve on the Purchase Orders operated as a credit on the entire ICC vendor account, which pursuant to the unequivocal terms of the Purchase Orders, QVC was entitled to offset against other amounts owed by ICC to QVC on other purchase orders." (QVC's Resp. to ICC's Summ. J. Mot. at 14.)   QVC relies on Kujawa's deposition testimony that, at the time of his deposition, the balance on QVC's entire vendor account with ICC was a debit of $3,194.49 owing to QVC.   (Kujawa Dep. at 70-71; see also Ex. 8 to O'Neal Decl.) Thus, QVC argues that the reserve that was initially set aside in connection with the Purchase Orders has already been "paid" to ICC insofar as it has been used to offset other amounts that ICC owes to QVC.  Upon consideration of this conflicting evidence, we conclude that there is a genuine issue of material fact as to whether QVC has paid for the unsold Screwdrivers.   This issue is material because Section 8, by its terms, only entitles QVC to a "refund" of the amount of any prior payment and, thus, ICC has breached its contractual obligation to remit a refund only if QVC has made a prior payment for the unsold merchandise.

Given this genuine issue of material fact, as well as the Purchase Orders' apparent requirement that QVC relinquish custody of the merchandise before ICC will be obligated to remit a refund, we conclude that QVC has failed to demonstrate with undisputed evidence that it is entitled to judgment as a matter of law on its Sale or Return Claim in Count III of the Complaint. We therefore deny QVC's Motion for Summary Judgment as to Count III of the Complaint.

2.    ICC's Motion for Judgment in its Favor on Counts III and IV

ICC contends in its Motion that it is entitled to judgment in its favor on the Sale or Return Claims in both Counts III and IV of the Complaint because QVC never made a timely request to return 8,000 (i.e., 50% of the) Screwdrivers pursuant to the Sale or Return Provision but, rather, sought to return 14,010 Screwdrivers within that time frame.   Thus, the question ICC presents for our resolution is whether QVC's April 22, 2009 request for a return authorization for 14,010 Screwdrivers can reasonably be construed as a timely request to return 8,000 Screwdrivers pursuant to the Sale or Return Provision.   QVC contends that it can, and that it is simply inconsequential that it asked to return 14,010 Screwdrivers rather than just the 8,000 that it was contractually entitled to return.   ICC, however, contends that QVC's request was ineffectual because it did not precisely conform with the return condition set forth in the Purchase Orders that QVC was only contractually entitled to return 50% of the Screwdrivers on account of the Screwdrivers' poor sales performance.

Reading the clear and unambiguous language of the Purchase Orders, we conclude that QVC had the right under Section 8 to return 50% of the Screwdrivers for poor sales performance and that it timely requested to exercise that right.   See TruServ Corp. v. Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. 2012) ("When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning." (citation omitted)).   While QVC admittedly requested that ICC issue a return authorization for over 14,000 Screwdrivers, i.e., more than it was contractually entitled to return under Section 8's plain terms, it made clear in its request that it was seeking to return the Screwdrivers "due to the sales performance" and, thus, made plain that it was attempting to enforce its rights under Section 8 within the requisite 180-day period.   (Ex. 4 to

Kujawa Decl.)   We thus reject ICC's argument that it is entitled to judgment in its favor on the Sale or Return Claims because QVC did not request to return 8,000 Screwdrivers within the 180-day period set forth in the Purchase Orders.   We therefore deny ICC's Motion for Summary Judgment insofar as it seeks judgment in ICC's favor on Counts III and IV of the Complaint.

       **C.**       **Count I of ICC's Counterclaim**

       ICC argues in its Motion for Summary Judgment that it is entitled to judgment in its favor on Count I of its Counterclaim in the amount of $95,600, i.e., the balance that QVC allegedly owes for the Screwdrivers because, in its view, the undisputed record evidence establishes that QVC did not request to return 50% of the Screwdrivers within the 180-day period provided in the Purchase Orders.   At the same time, QVC argues in its Motion for Summary Judgment that judgment should be entered in its favor on that same Count because, in its view, the undisputed evidence establishes that ICC breached the Purchase Orders by failing to accept return of, and issue a refund for, the 8,000 Screwdrivers for which it seeks payment, either because the Screwdrivers were subject to an infringement claim or because they were returnable under the Sale or Return Provision.   Thus, QVC contends that it cannot be held liable for the cost of the Screwdrivers.   We have, however, already rejected ICC's argument that QVC's request to return the unsold Screwdrivers was untimely, and have also concluded that QVC has not met its burden on summary judgment of establishing that ICC has breached the Purchase Orders by selling merchandise that was subject to a claim of infringement or by failing to issue a refund for unsold and unreturned merchandise.   Consequently, we deny ICC's and QVC's Motions for Summary Judgment insofar as they seek judgment as to Count I of ICC's Counterclaim.

**IV.    CONCLUSION**

For the foregoing reasons, we deny both Motions for Summary Judgment in their entirety.[13]   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

[13] QVC argues in its Motion that, if it succeeds on its claims and we enter judgment in its favor, it is entitled to both attorneys' fees and prejudgment interest.  However, given our conclusion that, at this stage of the proceedings, QVC is not entitled to judgment in its favor on any of the claims in its Complaint, we do not reach its claims for attorneys' fees and interest at this juncture.